IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| SUSAN C. COONROD, | ) | Case No. 4:04CV3251 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

     This is a social security appeal. After careful consideration, I find that the decision appealed from should be affirmed and the appeal denied. I arrive at this result despite the fact that the plaintiff, Susan C. Coonrod (Coonrod), complains that the Administrative Law Judge (ALJ) failed to properly consider her credibility, particularly if one factors in the additional evidence provided to the Appeals Council.

### *I. Background*

     I will briefly review the procedural history of this case. Then I will review the findings of the ALJ. After that, I will review the ALJ's credibility analysis. Lastly, I will review the evidence provided to the Appeals Council.

### *A. Procedural History*

     This suit involves two applications made under the Social Security Act (the Act). The first is an application for disability insurance benefits under Title II of the Act, 42 U.S.C. §§ 401 et seq. (Tr. 91-93.) Plaintiff was last insured for Title II benefits on December 31, 1999. (Tr. 162.) The second is an application for supplemental security income (SSI) benefits based on disability under Title XVI of

the Act, 42 U.S.C. §§ 1381 et seq. (Tr. 328-30.) Section 405(g) of the Act provides for judicial review of a "final decision" of the Commissioner of the Social Security Administration under Title II. Section 1383(c)(3) of the Act provides for judicial review of a "final determination" of the Commissioner of the Social Security Administration under Title XVI.

Plaintiff's applications were denied initially and on reconsideration. (Tr. 40-41, 47-50, 53-56, 332-33.) On September 25, 2003, following a hearing, the ALJ rendered a decision in which she found that Plaintiff was not under a "disability" within the meaning of the Social Security Act. (Tr. 15-34.) On May 28, 2004, the Appeals Council of the Social Security Administration denied Plaintiff's request for review. (Tr. 9-12.) Thus, the decision of the ALJ stands as the final decision of the Commissioner.

### B. ALJ's Decision

The plaintiff is a female who was 52 years of age at the time of the hearing. (Tr. 19.) She completed high school. (Tr. 19.) Although her work history was meager, her past relevant work was that of a day care worker, maid, production assembler and construction worker. (Tr. 19.)

The plaintiff alleged in an October 15, 2001, application that since August 1, 1995, she has been unable to engage in any type of substantial work. (Tr. 18.) She attributed her disability to depression, tendon surgery on the left wrist (due to a stabbing[1]) and osteoarthritis. (Tr. 18.)

---

[1]The plaintiff had surgery on her left forearm and wrist to repair a serious knife wound after she and her boyfriend got into an argument. (E.g., Tr. 22-23.)

After hearing the evidence, the ALJ made the following nine ultimate findings of fact and conclusions of law:

1.  The Claimant met the special earnings requirements under Title II of the Social Security Act, as amended, on August 1, 1995, the date she stated she became unable to work, and continued to meet them through December 31, 1999, but not thereafter.

2.  The Claimant has not performed substantial and gainful work activity as defined in the Regulations since August 1, 1995.

3.  The record establishes that the Claimant has the following medically determinable impairments which have imposed more than slight limitations upon her ability to function: status post laceration of the left wrist, osteoarthritis, depression, personality disorder, and alcohol dependence.[2]

4.  Her medically determinable impairments, either singly or collectively, have not revealed the same or equivalent attendant medical findings as are recited in Appendix 1 to Subpart P of the Social Security Administration's Regulations No. 4; however, they have imposed some limitations upon her ability to perform basic work-related functions, as noted earlier in this decision.

5.  In spite of such limitations, the Claimant is able to perform her past relevant work as a cleaner/housekeeper, as well as those additional occupations described by the vocational expert during the course of that witness' testimony.

6.  The Claimant's testimony was generally credible except with respect to the extent of her symptoms and limitations, in view of

---

[2]The plaintiff's lawyer acknowledges that a "claimant has the burden of proving that her substance dependency is not a contributing factor material to her claimed disability." (Filing 13, Pl.'s Br. at 2 (citing Estes v. Barnhart, 275 F.3d 722, 724-25 (8th Cir. 2002).)

       the criteria set forth under 20 CFR 404.1529 and 20 CFR 416.929, Social Security Ruling 96-7p, and <u>Polaski v. Heckler</u>, supra.

7. Accordingly, the Claimant is not disabled, as that term is defined under the Social Security Act, as amended, pursuant to 20 CFR 404.1520(e) and 20 CFR 416.920(e).

8. The Claimant is not entitled to a period of disability or to the payment of disability insurance benefits under Title II of the Social Security Act, as amended.

9. The Claimant is not eligible for the payment of supplemental security income benefits under Title XVI of the Social Security Act, as amended.

(Tr. 33-34.)

### C. Credibility Decision

The ALJ acknowledged a responsibility to apply <u>Polaski v. Heckler</u>, 739 F.2d 1320 (8th Cir. 1984), when assessing the claimant's credibility. (Tr. 29.) The ALJ carefully analyzed the plaintiff's claims regarding the severity of her medical and mental health problems. (Tr. 27-32.)

The ALJ ultimately found as follows:

In the instant case, the record shows that the Claimant's medically determinable impairments could reasonably be expected to produce the type of symptoms, e.g., musculoskeletal discomfort, problems with left wrist functioning, and depressed mood, described by the Claimant. Therefore, in accordance with 20 CFR 404.1529, 20 CFR 416.929, and SSR 96-7p, it must now be determined whether the Claimant experiences such symptoms in such intensity, and of such frequency and duration, as would preclude all types of substantial and gainful work

activity. As noted previously, inherent in such analysis is an assessment of the Claimant's credibility.

The undersigned finds that the evidence in this case does not substantiate the Claimant's allegations with respect to the extent of her symptoms and limitations, and does not support a finding of disability. In this regard, it is noted that there is no evidence to support an alleged onset date of August 1, 1995 or any impairment prior to her date last insured for Title II of December 31, 1999. Further, the Claimant is not in mental health treatment and she is not on any medications, and she has not been compliant with prescribed treatment (including physical therapy for her left wrist laceration) (Exhibit 15F). It is also noted that the Claimant moves a lot, after various boyfriends, and she has an alcohol driven life.[3] In addition, on November 5, 2001, Dr. Tatay, the psychiatrist who previously treated the Claimant, reported that, other than for alcohol abuse, the Claimant could do routine work, and he reported that the Claimant was "somewhat depressed, but it was felt the depression was secondary to her substance abuse" (Exhibit 11F); and Dr. Garvin, the Claimant's treating orthopedic surgeon, reported on December 17, 2001 that the Claimant "could return to light duty activities that do not require lifting, twisting, turning, or grasping with the left wrist or hand" (Exhibit 13F/3).

With respect to the Claimant's psychological functioning independent of alcohol abuse, the undersigned finds that she has mild restriction of activities of daily living; mild difficulties in maintaining social functioning; mild to moderate difficulties in maintaining concentration, persistence, or pace; and no repeated episodes of decompensation of extended duration.

---

[3]The record is full of evidence that Coonrod suffers from severe alcoholism (e.g., Tr. 20, 22) and that her life during the relevant time frame has been characterized by a lack of motivation to work (e.g., Tr. 30), a homelessness that stretched between Colorado and Nebraska and physical violence involving her boyfriends. (E.g., Tr. 22, 26-27.)

In regard to the Claimant's work record, the evidence shows that she has generally had a poor work record, with very modest earnings. (Exhibit 4D.) However, it is noted that an individual's work record cannot be the determinative factor in judging credibility and is only useful in determining whether an individual is or is not motivated to work.

(Tr. 31-32.)

### D.  Additional Evidence Presented to the Appeals Council

The Appeals Council was provided with the following letter from Coonrod's lawyer:

March 15, 2004

Mr. Brett McArthur
6201 S 58th Street, Ste C
Lincoln, NE 68516

RE:   Susan Coonrod

Dear Mr. McArthur,

This letter is regarding Susan Coonrod and her disability claim.  Her diagnosis is as follows:

| | |
|---|---|
| Axis I: | Bipolar; Mixed with Obsessive-Compulsive Disorder and Mild Psychosis; Alcohol Dependence; and a Specific Phobia |
| Axis II: | Personality Disorder, NOS; borderline traits and Antisocial Behavior |
| Axis III: | Chronic Back Pain |

Ms. Coonrod does continue to experience pain due to the Arthritis on a consistent basis.  The Arthritis effects her ability to complete everyday tasks including cleaning and walking for long periods of time.  The

physical pain can often lead to Ms. Coonrod experiencing mental health symptoms, including those occurring with a Bipolar diagnosis. Specifically symptoms of depression can occur, including feelings of hopelessness.

Both the physical and mental health symptoms can lead to an inability to work independently for long periods of time; as in the case of Ms. Coonrod.

If you need any further information, please contact Ms. Coonrod's case manager, Amy Wagner at 475-5161.

Sincerely,
s/ Dianna Clyne, MD

(Tr. 335.)

The Appeals Council considered the letter. (Tr. 12.) However, the Council concluded that this additional information "does not provide a basis for changing the Administrative Law Judge's decision." (Tr. 9.)

## *II. Analysis*

Essentially, Coonrod argues that the ALJ erred when he found that she was not credible regarding the severity of her problems. She also argues that new evidence provided to the Appeals Council supports her claim that she was both credible and disabled. I am not persuaded by either argument.

First, the evidence before the ALJ was plainly sufficient for the ALJ to conclude that Coonrod was not credible regarding the severity of her medical and mental impairments. For example, and as specifically noted by the ALJ,

(1) With regard to her mental problems, the plaintiff's treating psychiatrist thought the plaintiff's problems were primarily substance-abuse related and that if she remained sober "'she could be rehabilitated to the point of being able to perform simple tasks in a routine work setting'" (Tr. 25);

(2) With regard to the stab wound in her wrist, the plaintiff's treating orthopedic surgeon thought the plaintiff "'could return to light duty activities that do not require lifting, twisting, turning, or grasping with the left wrist or hand" (Tr. 25);

(3) With regard to the wound on the left wrist, the plaintiff failed to attend physical therapy sessions, causing the therapist to "'regret this patient's decision not to attend therapy on a regular basis'" (Tr. 26);

(4) Despite claims of disabling pain, the claimant "'wanders around town'" sometimes "'18 hours each day'" merely "'killing time'" (Tr. 30); and,

(5) Despite the fact that Coonrod claimed a disability onset date in 1995, Dr. Thomas H. England, a medical advisor, "'stated that there is no support for the Claimant's alleged onset date of disability of 1995, and that the first records are in 1999 when [the claimant] was in detoxification[.]'" (Tr. 30).

While the plaintiff can point to some evidence that supports her credibility, the question is not whether the ALJ might have decided differently. Rather, for purposes of appellate review, the ALJ satisfies his or her obligation when the ALJ makes an express credibility determination (as here), considers the Polaski factors (as here), and details the reasons for discrediting the claimant's credibility (as here) by relying upon

substantial evidence in the record (as here). See, e.g., Vonbusch v. Apfel, 132 F. Supp.2d 785, 793-96 (D. Neb. 2001) (lengthy discussion of how ALJ's credibility determinations are to be reviewed on appeal). This deferential standard of review is particularly appropriate where, as here, Coonrod "carries the burden of proving her substance abuse is not a contributing factor material to the claimed disability." Estes, 275 F.3d at 725.

Second, the plaintiff relies upon a doctor's letter dated March 15, 2004, submitted to the Appeals Council, to bolster her credibility. I am not persuaded that the letter makes any difference.

I arrive at this conclusion for three reasons. Initially, there is no foundation given for the opinions expressed therein and there were no supporting medical records tendered with the letter from which a foundation could be inferred. Next, the doctor acknowledges that the claimant suffers from alcohol dependence, but the doctor made no effort to distinguish between that dependence and the other ailments. Most importantly, the letter is dated six months after the relevant time frame[4] and it does not purport to discuss the relevant time frame. Therefore, the letter is not material under the law. See, e.g., Estes, 275 F.3d at 725-26 (new evidence must be relevant and probative of the claimant's condition for the time period for which benefits were denied).

### III. Conclusion

I have great empathy for Coonrod. However, on the record presented to me, the appeal must be denied.

---

[4] The relevant time frame ended on the date of the ALJ's decision; that is, on September 25, 2003. See, e.g., Estes, 275 F.3d at 725 ("The relevant time period . . . ended . . . when the ALJ denied [the claimant's] application for benefits.").

June 23, 2005.               BY THE COURT:

*s/Richard G. Kopf*
United States District Judge